UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

ALFREDO MATIAS, an Individual

      Plaintiff,

v.

CITY OF MIAMI, a municipality,

      Defendant.

**COMPLAINT**

## INTRODUCTION

Plaintiff, ALFREDO MATIAS, ("Plaintiff "or "Matias") sues Defendant, CITY OF MIAMI, ("the City") for violation of Matias's rights pursuant to the Florida's Public Whistleblower Act, ("FWA"), Fla. Stat. §112.3187, et seq., the Florida Law Enforcement Bill of Rights, Fla. Stat. 112.532, et. seq., 42 U.S.C. §1983, and City of Miami Charter and Code of Ordinances which ended in his wrongful termination, deprived him of supplemental income, and subjected him to retaliatory treatment in contravention of Florida law.

## JURISDICTION AND PARTIES

1. This is an action for damages. Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983, First Amendment retaliation claims.

2. Plaintiff also brings this lawsuit under Fla. Stat. 112.3187, et seq. as well as under the Florida Law Enforcement Bill of Rights, Fla. Stat. 112.532, et. seq.

3. At all times material hereto, Plaintiff Alfredo Matias is a natural person, *sui juris*, who is a resident of the State of Florida and resides in Broward County, Florida.

4. At all times material hereto, Matias was a "law enforcement officer" as that term is defined under Fla. Stat. Sec. 112.531 (1) and an employee of the City of Miami.

5. Fla. Stat. § 112.3187(3)(c) defines "employee" as "a person who performs services for, and under the control and direction of, or contracts with, an agency or independent contractor for wages or other remuneration."

6. Under the Statute, "Employees Protected" are defined as those employees and persons who are requested to participate in an investigation, hearing, or other inquiry conducted by an agency or federal government entity. Florida Stat. § 112.3187(7).

7. Defendant, City of Miami ("the City" or "Defendant") is an "agency" under the Statute. Fla. Stat. § 112.3187(3)(b) defines "Agency" as "any state, regional, county, local, or municipal government entity, whether executive, judicial, or legislative; any official, officer, department, division, bureau, commission, authority, or political subdivision therein; or any public school, community college, or state university.

8. This Court has jurisdiction over all the parties pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(3) and (4) and 28 U.S.C. §1367(a) and 29 U.S.C. §216 (b). The jurisdiction of the Court is further invoked to secure protection for and to redress the deprivation of rights protected by 42 U.S.C. §1983.

9. Venue is proper under 28 U.S.C. § 1391(b) because the Defendant's wrongful activities that form the basis of the causes of action contained in this complaint accrued in Miami–Dade

County and because the Defendant transacts their customary business within this judicial district.

10. All conditions precedent have been satisfied, waived or excused before the filing of the instant lawsuit.

## GENERAL ALLEGATIONS

11. Alfredo Matias worked as a police officer for the City of Miami's Department of Police from February 11, 1998, until January 27, 2022.

12. Throughout Plaintiff's more than two-decade career, Plaintiff maintained a clean disciplinary record and was never subjected to discipline or termination until after he engaged in protected whistleblowing activity and provided sworn testimony concerning corruption within the Department. Plaintiff was first terminated on February 5, 2015, following his protected disclosures, and again terminated on January 27, 2022, following his sworn affidavit.

13. On or around September 14, 2020, Officer Matias participated in an investigation, a hearing, or other inquiry conducted by providing an affidavit in another officer's case, Luis Valdes v. City of Miami, Case No.: 2020-002042-CA-01, which was pending in and for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. Matias filed a sworn affidavit in the Valdes' civil lawsuit against the City of Miami. His affidavit was testimony in a judicial proceeding – explicitly protected activity.

14. Fla. Stat. §112.3187 provides that an agency cannot take an adverse personnel action against an employee in retaliation for disclosure to an appropriate agency alleging improper use of a governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the part of an agency, public officer, or employee.  In addition, the statute provides protection for reporting gross mismanagement, misfeasance, malfeasance, and violations of the law.

15. The statute protects Employees who participate in an investigation, disclose information on their own initiative in a written and signed complaint, and/or those who are requested to participate in an investigation.

16. Under the statute, the information submitted by an employee must be a "protected activity."  The information is a "protected activity" if it is reporting a violation or suspected violation of federal or state law or any act of "misfeasance, malfeasance, or gross mismanagement" pursuant to Section 112.3187(5)(a) and (b).

## A.  Factual Background Regarding Prior Retaliation[1]

17. Plaintiff served more than twenty years (20) as a sworn City of Miami police officer.

18. In 2015, Plaintiff became a protected whistleblower after reporting and cooperating with authorities regarding criminal corruption by the City of Miami Police Department (MPD) Sergeant Raul Iglesias, including theft of money and narcotics and the planting of drugs. Plaintiff's cooperation contributed to Iglesias's criminal conviction.

---

[1] Plaintiff is not seeking damages or relief related to the 2015 termination referenced herein.

19. Upon information and belief, at the time of Iglesias's misconduct, the current Chief of Police, Manuel Morales, was serving as a commander within MPD and maintained a close personal and professional relationship with Iglesias.

20. Plaintiff's cooperation against Iglesias generated lasting animus within MPD leadership.

21. Officer Matias reported malfeasance and violation of law because, among other things, he reported that a City of Miami police officer was "planting evidence" on unsuspecting citizens. Sgt. Raul Iglesias allegedly planted drugs in a suspect's pants that Matias and Valdes had previously frisked and knew that the suspect did not possess any drugs. Officer Matias participated in a further federal investigation into this officer's malfeasance.

22. In his affidavit, Matias states that he was part of an elite unit, the Crime Suppression Unit ("CSU"). During the course of his duties, Officer Matias and Officer Valdes detained a suspect and found no illegal substance.  Sgt. Raul Iglesias told them to plant the evidence on the suspect. They refused.

23. Sgt. Raul Iglesias subsequently said he found drugs in back pocket of suspect.  They knew no drugs were on the suspect because they had previously frisked him. Sgt. Raul Iglesias subsequently planted the evidence on the suspect in violation of state and federal law.

24. Matias and Valdes filed an anonymous complaint regarding Iglesias's unlawful activities. The FBI began investigating Sgt. Iglesias and conducted a sting operation against him using surveillance video and audio evidence that showed him stealing cash.

25. Iglesias was ultimately indicted, tried, and found guilty in federal court for his illegal activities.  Immediately before Sgt. Iglesias was to turn himself in to the authorities, in violation of a court order, he published tapes of Officers Matias and Valdes cooperating with federal authorities. The point of publishing the tapes was to portray them as "snitches" and, therefore, not to be trusted by their law enforcement colleagues. Charges were again filed against Iglesias for violating the court's order, to which he pleaded guilty to that illegal conduct.

26. After it came to light within the police department that Matias and Valdes had participated in the FBI investigation of Iglesias, they were subject to intimidation and threats by fellow officers, including their refusal to back them up on calls.

27. In an effort to assist Iglesias in his appellate efforts, Major Colina told Officer Matias if he did not admit that he lied to the FBI during its investigation, then he would be fired, and things "would not go well for him." Matias refused to change his testimony in any way, and he was subsequently fired by the City on February 5, 2015.

28. Matias disputed his termination, prevailed in his arbitration, and was reinstated on December 30, 2015.

29. Officer Valdes was also fighting his termination in civil court.

**B.  Factual Allegations regarding Plaintiff's Current Protected Activities**

30. On September 14, 2020, in furtherance and in support of the Valdes lawsuit, Officer Matias signed an affidavit critical of Iglesias's misconduct and subsequent behavior by

the City through its Internal Affairs Division and command staff; that affidavit was filed in court on or about September 24, 2020.

31. Defendant, through Assistant City Attorney Stephanie Panoff, initiated an Internal Affairs investigation against Plaintiff solely because Plaintiff submitted a truthful affidavit adverse to the City's litigation position.

32. On October 1, 2020, one week later, Matias was suspended by the City without any investigation or charges. His termination stemmed from an Internal Affairs complaint filed by Stephanie Panoff, the Assistant City Attorney handling the Valdes civil litigation.

33. The Chief of Police knew and was notified of Matias's filing because it was he who suspended Matias in writing.

34. The nature of the information provided by Mr. Matias in his affidavit implicated both 112.3187 (5)(a) and (b). Matias disclosed information of federal and state law by corroborating that a Miami police officer participated in planting evidence on unsuspecting citizens, theft of monies, perjury, and, not to mention, unlawful retaliation by the City of Miami police department against Matias and Valdes's willing participation in the federal and state investigation into those nefarious activities. Obviously, public servants who engage in this behavior "present a substantial and specific danger to the public's health, safety and welfare."

35. Matias is also protected under subsection (b) because it discloses gross malfeasance, misfeasance, and/or gross neglect of duty.

36. Matias's disclosure of information, as outlined in his affidavit, was made in good faith and based on a reasonable belief that his employer engaged in unlawful employment practices.

37. The subsequent Internal Affairs investigation into Matias did not follow the City's standard operating procedures. For the investigation to proceed, Panoff was required to make a sworn statement against Matias. See, Fla. Stat. 112.532 (1) (d) ...[a]ll identifiable witnesses shall be interviewed prior to the investigative interview of the accused officer.

38. Ms. Panoff, as the complainant in an internal affairs investigation, never provided a sworn statement. The City was aware of this obligation but willfully neglected its legal duty. However, the investigation into Matias went on anyway despite violating the Officer's Bill of Rights.

39. In violation of these policies and the Officer's Bill of Rights, Ms. Panoff did not provide a legally-required statement. As such, the City violated its own SOP by conducting an Internal Affairs investigation without a sworn statement from the complainant, Panoff.

40. No other City employee has been given a choice not to provide a sworn statement when they are the complainant, subject, or a witness in an internal affairs investigation.

41. City's Civil Board found that the City did not conduct a "complete investigation" because it did not question complainant Panoff.

42. Matias was deprived of his rights guaranteed under the Florida law.

43. The City further violated its own policies and procedures by investigating matters related to a civil lawsuit, namely the Valdes lawsuit.  Per the Internal Affairs SOP, the City does not investigate civil matters, as those matters should be referred to the appropriate courts.

44. If there was a misstatement in the affidavit, it should have been reviewed by the Judge in the Valdes case.

45. The investigation began after Matias's suspension in October 2020 and culminated in termination on January 27, 2022.

46. The alleged basis of his termination was that he lied on his affidavit in the Valdes case.

47. Matias challenged his termination. He underwent three days of an appeal hearing before the Civil Service Board.  After the three-day hearing, the Board found in his favor in a 5-0 vote.  The Board's Findings of Fact determined that Matias was not untruthful and did not make false statements in his affidavit.

48. Plaintiff pursued his statutory Whistleblower appeal before the City of Miami Civil Service Board. After a full evidentiary hearing, the Board found in Plaintiff's favor by a 3–2 vote, determining that Plaintiff's affidavit was truthful and that the City failed to establish misconduct. Notwithstanding that ruling, the City refused to reinstate Plaintiff and maintained the retaliatory termination.

49. Matias' affidavit in the Valdes case is protected activity.  See Clover v. Total Systems, Inc. 176 F.3d 1346 (11th Cir. 1999).   A suspension or termination constitutes an adverse personnel action per Fla. Stat. §112.3187.  Matias' protected activity was

causally connected to his suspension and ultimate termination which occurred one week after his affidavit was filed with the Court.   The City subsequently terminated his employment.

50. A causal connection has been found by courts when there is a greater temporal span. McCann v. Tillman, 526  F.3d 1370 (11th Cir. 2008)(court found that six weeks was sufficiently close in time to establish temporal proximity)

51. As a result of the retaliation and adverse conduct of the City of Miami, Plaintiff has suffered and continues to suffer emotional and financial damage.

**COUNT I – WHISTLEBLOWER**
*(In Violation of Whistle-blower's Act SS 112.3187, et. seq. )*

52. Plaintiff incorporates and re-alleges paragraphs 1 through 51 as though fully set forth herein.

53. Plaintiff, Alfredo Matias, was a former police officer with the CITY OF MIAMI when he was wrongfully terminated from his employment on January 27, 2022 because, among other things, he disclosed information protected under Florida Statute §112.3187(5), including:

    (a)   Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare.

    (b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid

fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

54. At the time of his wrongful discharge, Matias worked with the City for approximately 24 years, accruing employment benefits and emoluments accordingly.

55. Upon receiving Plaintiff's formal complaint, at some point within the City of Miami's administrative process, a decision was made to investigate Matias instead and deprive him of his procedural and substantive due process rights, which are guaranteed under Florida law.

56. City decided to terminate Matias in violation of the Fla. Stat. §§ 112.3187, 112.532, and 112.533.

57. The City's January 27th, 2022 termination of Matias's employment constitutes an adverse action in violation of the Florida Whistleblower Statute, F.S. 112.3187, because he was fired in retaliation for disclosing information of federal and state law by corroborating that a Miami Police office participated in planting evidence on unsuspecting citizens, theft of monies, perjury, not to mention the unlawful retaliation by the City of Miami Police Department for Matias and Valdes's willingness to participate in the federal and state investigation into those nefarious activities.

58. At all relevant times, Defendant acted under color of law in engaging in the retaliatory and unlawful conduct described herein.

59. The City terminated Plaintiff's employment for, among other things, Plaintiff filed a written and signed complaint reporting malfeasance, misfeasance, illegality, fraud, and misconduct.

60. Plaintiff also refused to condone improper adverse action. Plaintiff provided truthful testimony as part of his ongoing participation in investigations and inquiries regarding illegal conduct, malfeasance, misfeasance, gross mismanagement, and illegal improper adverse action.

61. Among other things, Plaintiff blew the whistle as described above on the illegal conduct of officer (Sergeant) Raul Iglesias and others, which included perjury, false arrests, planting evidence, drug dealing, theft of money, corruption, and other illegal conduct. Plaintiff also blew the whistle on an illegal cover-up of this malfeasance, misfeasance, and illegality by others and opposed improper adverse action regarding the same. Matias participated in multiple investigations on these matters.

62. Also, Matias is protected under subsection (b) because it discloses gross malfeasance, misfeasance and/or gross neglect of duty.

63. A review of Matias's affidavit shows that he discloses the following:

   i. That he was in an elite unit of Miami PD detectives known as the "Crime Suppression Unit" or "CSU." ¶ 4

   ii. That during the performance of his duties, Matias in Valdes detained and searched a suspect whereupon "no contraband was located." Para. 5.

   iii. That Matias was under the command of Raul Iglesias who requested that he and Valdez "plant drugs on the suspect." Para. 7.

iv.    Matias and Valdez refused to break the law by planting said evidence. Para. 8

v.    Raul Iglesias then advised Matias and Valdez that he subsequently "discovered drugs in the suspect's rear pocket." Para. 10.

vi.    That it was clear to Matias and Valdez that Sgt Iglesias committed a "major crime in [their] presence." Para 12.

vii.    That Matias, Valdez, and his fellow CSU detectives conferred and all agreed to draft an anonymous letter to Internal Affairs regarding Sgt. Iglesias's illegal behavior. Paras. 15-16.

viii.    The FBI got involved and began to investigate Iglesias for corruption, and, eventually, a sting operation was set up, whereupon Iglesias was captured on video "stealing cash money, "which was strategically placed under video surveillance as part of the FBI sting operation." Consequently, a 9-count indictment was brought against Iglesias in federal court. See, paras. 16-19.

ix.    As a result of Matias and Valdez's cooperation, they were the target of harassment and intimidation within the force, including, among other things, threatening letters and failure to be provided backup when "engaged in dangerous on-duty situations." Para 20.

x.    Days before he was to turn himself in to federal authorities as a result of his conviction, Iglesias published sealed audio recordings of Matias and Valdes's cooperation with federal authorities as part of the sting operation. This unlawful publishing was intended to further ostracize Matias and Valdes within the department. Para 26.

xi.    Internal Affairs later approached Matias to coerce him to sign a reprimand saying that he lied in his cooperation with the FBI in the Iglesias matter to assist him on his appeal. When Matias refused, then-Major Colina warned that he would be fired and it "would not go well for [him]." Para 31.

xii.    In his affidavit, Matias also asserted that he feared for his safety. Para 32.

xiii.   Matias was later fired unlawfully in February 2015, to which he filed a grievance on the basis that he was improperly terminated in retaliation for his participation in the Iglesias matter. To which the arbitrator agreed, awarding him reinstatement, including backpay and other remedies. Para. 40.

64. Because of this protected activity under Chapter 112.3187, Plaintiff was the recipient of adverse action, including his termination on January 27, 2022.

65. The City wrongfully terminated Matias in violation of the Whistleblower statute because:

(a) Alfredo Matias engaged in protected activity by submitting the affidavit.

(b) The City of Miami took adverse personnel actions against Matias, including improper investigation, suspension, salary reduction, and ultimately termination, due to his protected activity.

(c) The City initiated an investigation and relieved Matias of duty just ten days after Matias filed his affidavit.

(d) The City did not follow the Officer's Bill of Rights and its own operating policies and procedures when it investigated Matias.

66. There is a sufficient causal link between the protected activity and the adverse actions to establish a violation of Fla. Stat. §112.3187, as the timing of Matias's affidavit and his termination by the City were "not wholly unrelated," as supported in Clover v Total Sys. Servs. Inc., 173 F.3d 1354 (11th Cir. 1999).

67. Had it not been for the Plaintiff's protected disclosures and sworn statement, Defendant would not have initiated the Internal Affairs investigation or suspended or terminated Plaintiff's employment.

68. The City's disciplinary actions against Matias, including relieving him from duty, suspension, and termination, were based on the affidavit.

WHEREFORE, Plaintiff Alfredo Matias demands that this Court order Defendant City of Miami to:

(a) Award front pay in lieu of reinstatement because the employer-employee relationship was destroyed due to Matias's whistleblowing activity, which implicated the City in wrongdoing.  In awarding front pay, this Court should include the value of Matias's fringe benefits (or their fair market value), including interest and other seniority rights.

(b) Order the City of Miami to make Matias whole, pursuant to Fla. Stat. §112.3187 (9)(a)(c), by providing appropriate monetary damages for lost wages, compensation, emoluments, and benefits due to the City's violations;

(c) Reinstatement of the employee's full fringe benefits and seniority rights, and compensation for any lost remuneration caused by the adverse action.

(d) Award them their attorney's fees and costs and,

(e) Enter any other order that this court deems necessary and proper as a consequence of Defendant's actions, including pre-judgment interest.

## COUNT II –
*(In Violation of 42 U.S.C. § 1983 Claims – First Amendment Retaliation)*

69. Plaintiff incorporates and re-alleges paragraphs 1 through 51 as though fully set forth herein.

70. On or about September 14, 2020, in furtherance and support of the Valdes lawsuit, Matias signed an affidavit critical of Iglesias's misconduct and the City's subsequent behavior through its Internal Affairs Division and command staff. All of this information, including the criminal charges against Iglesias and the City's activities regarding this matter, was a matter of public concern.

71. Plaintiff's affidavit was filed in court on or about September 24, 2020. That affidavit addressed matters of public concern and was provided outside the scope of Plaintiff's ordinary job duties.

72. Matias's affidavit testimony was considered protected speech or conduct because, among other things, he testified about Iglesias's illegal actions as an officer. Iglesias was indicted, tried, and convicted in federal court; as such, the information became public. It then became a matter of public concern because it involved the City's corruption and illegal activities by a city officer. r.

73. Matias's sworn testimony in Valdes's judicial proceedings was protected speech, given in his capacity as a citizen on a matter of public concern.

74. The City of Miami, acting under the color of law, initiated an Internal Affairs investigation against the Plaintiff in retaliation for the Plaintiff's cooperation with civil litigation and his sworn testimony in a judicial proceeding that was adverse to the City's litigation position.

75. At all times relevant to this Complaint, City Attorney, Chief of Police, and City Manager were duly appointed, authorized, and acted under the color of law, to wit, under color of

statutes, ordinances, regulations, policies, customs, and usages of the State of Florida or the City of Miami, including City of Miami Police Department.

76. Defendant City of Miami retaliatory actions taken against Plaintiff were undertaken pursuant to official policy, custom, and practice, including but not limited to: (a) the practice of permitting the City Attorney's Office to initiate Internal Affairs investigations against adverse witnesses in City litigation; (b) the practice of disciplining officers for providing sworn testimony adverse to the City's litigation interests; and (c) the failure to train and supervise policymakers to prevent retaliation against whistleblowers and adverse witnesses.

77. The Chief of Police and City Manager, acting as final policymakers for the City with respect to officer discipline and termination, ratified and approved the retaliatory conduct by enforcing Plaintiff's suspension and termination and refusing to reinstate him despite findings by the Civil Service Board that Plaintiff committed no misconduct and that his affidavit was truthful.

78. On October 1, 2020, one week later, Matias was suspended by the City without any investigation or charges. His termination stemmed from an Internal Affairs complaint filed by the Assistant City Attorney handling the Valdes civil litigation.

79. The City did not have adequate justification for treating Matias differently from any other member of the general public.

80. Instead, the City decided to suspend Matias in October 2020, investigated him for exercising his First Amendment right by providing truthful sworn testimony in a civil

lawsuit, and ultimately terminated him on January 27, 2022 for providing that testimony.

81. Matias's disclosure of information, as outlined in his affidavit, was made in good faith and based on a reasonable belief that his employer engaged in unlawful employment practices.

82. The Plaintiff's protected speech and sworn testimony were a motivating factor in the City's decision to suspend, investigate, and ultimately terminate Plaintiff.

83. Defendant's decision to suspend, investigate, and ultimately terminate Plaintiff would likely deter a similarly situated reasonable person from engaging in similar protected activity, i.e., providing testimony in a civil lawsuit, as Matias did.

84. The City acted under color of law to, among other things, suppress adverse witnesses and deprived Plaintiff of his rights under the First Amendment to the United States Constitution.

85. At all times material, the City of Miami engaged in conduct that was the proximate cause of the violations of Plaintiff's federally protected rights. As a result thereof, Plaintiff suffered and continues to suffer severe emotional and financial damages.

WHEREFORE, Plaintiff respectfully requests that this Court order Defendant to make Plaintiff whole, as he was adversely affected by the activities described herein, by providing lost wages, compensatory damages, prejudgment interest, and any other damages allowed in action,

and, enter an award and judgment for attorney's fees and costs, and all other further relief that this Court deems necessary and proper.

## COUNT III –
*(In Violation of Law Enforcement Officers' Bill of Rights (§112.532)*

86. Plaintiff incorporates and re-alleges paragraphs 1 through 51 as though fully set forth herein.

87. On September 14, 2020, in furtherance and in support of the Valdes lawsuit, Officer Matias signed an affidavit critical of Iglesias's misconduct and subsequent behavior by the City through its Internal Affairs Division and command staff; that affidavit was filed in court on or about September 24, 2020.

88. On October 1, 2020, one week later, Matias was suspended by the City without any investigation or charges. His termination stemmed from an Internal Affairs complaint filed by the Assistant City Attorney handling the Valdes civil litigation.

89. The subsequent Internal Affairs investigation into Matias did not follow the City's standard operating procedures. For the investigation to proceed, Panoff was required to make a sworn statement against Matias. See, Fla. Stat. 112.532 (1) (d) …[a]ll identifiable witnesses shall be interviewed prior to the investigative interview of the accused officer.

90. Ms. Panoff, as the complainant in an internal affairs investigation, never provided a sworn statement. The City was aware of this obligation but willfully neglected its legal

duty. However, the investigation into Matias went on anyway despite violating the Officer's Bill of Rights.

91. In violation of these policies and the Officer's Bill of Rights, Ms. Panoff did not make such a statement. The City violated its own Standard Operating Procedures (SOP) by failing to obtain the complainant's sworn statement, thereby conducting an Internal Affairs investigation without a sworn statement from the complainant, Ms. Panoff.

92. No other City employee has been given a choice not to provide a sworn statement when they are the complainant, subject, or a witness in an internal affairs investigation.

93. The City's Civil Board found that the City did not conduct a "complete investigation" because it did not question complainant Panoff.

94. The City further violated its own policies and procedures by investigating matters related to a civil lawsuit, namely the Valdes lawsuit.  Per the Internal Affairs SOP, the City does not investigate civil matters, as those matters should be referred to the appropriate courts.

95.  The investigation began after Matias's suspension in October 2020 and culminated in termination on January 27, 2022.

96.  The City's process of terminating first and investigating later violates Florida law.   This more than 180-day delay in investigating Matias violates the Law Enforcement Officer's Bill of Rights.

97.  At all relevant times, Defendant acted under color of law in engaging in the retaliatory and unlawful conduct described herein.

98. Pursuant to Florida Statute 112.532 (6)(a):

> "Except as provided under this subsection, disciplinary action, suspension, demotion, or dismissal may not be undertaken by an agency against a law enforcement officer…for any act, omission, or other allegation of misconduct if the **investigation of the allegation is not completed within 180 days after the date the agency receives notice of the allegation by a person authorized by the agency to initiate an investigation of the misconduct**."

99. Furthermore, Florida law requires that any investigation into the facts of a law enforcement officer's alleged misconduct must be certified as true under penalties of perjury, which was not done relative to the Matias investigation and, as such, his termination was in violation of Florida law.

100. Specifically, Fla. Stat. Sec. 112.533 states:

> **112.533   Receipt and processing of complaints. —**
>
> (1)(a)   Every law enforcement agency and correctional agency shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such agency from any person, which shall be the procedure for investigating a complaint against a law enforcement and correctional officer and for determining whether to proceed with disciplinary action or to file disciplinary charges, notwithstanding any other law or ordinance to the contrary. When law enforcement or correctional agency personnel assigned the responsibility of investigating the complaint prepare an investigative report or summary, regardless of form, the person preparing the report shall, at the time the report is completed:
>
> **1.   Verify pursuant to s. 92.525 that the contents of the report are true and accurate based upon the person's personal knowledge, information, and belief.**
>
> **2.   Include the following statement, sworn and subscribed to pursuant to s. 92.525:**

"**I, the undersigned, do hereby swear, under penalty of perjury, that, to the best of my personal knowledge, information, and belief, I have not knowingly or willfully deprived, or allowed another to deprive, the subject of the investigation of any of the rights contained in ss. 112.532 and 112.533, Florida Statutes**."

The requirements of subparagraphs 1 and 2 **shall be completed prior to the determination as to whether to proceed with disciplinary action or to file disciplinary charges.**

**(Emphasis Supplied)**

101.     At no time relative to this cause of action did the City ever comply with the aforementioned statutes prior to its termination of Matias.

102.     Matias was deprived of his rights guaranteed under the Florida law.

103. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered severe emotional distress, humiliation, anxiety, loss of professional reputation, and mental anguish.

WHEREFORE, Plaintiff Alfredo Matias demands that this Court order Defendant City of Miami to make Matias whole by:

a)  awarding him appropriate monetary damages for lost wages, including back pay, front pay, emoluments, compensatory damages for humiliation, loss of professional reputation, emotional distress, and benefits due to the City's violations. In awarding front pay, this Court should include the value of Matias's fringe benefits (or their fair market value), including interest and other seniority rights;

b)  reinstating his employee's full fringe benefits and seniority rights, and compensation for any lost remuneration caused by the adverse action;

c)  d) Award them their attorney's fees and costs and,

d)  e) enter any other order that this court deems necessary and proper as a consequence of Defendant's actions, including pre-judgment interest.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, Alfredo Matias, demands a trial by Jury for each issue so triable herein.

Respectfully submitted on January 15, 2026.

**THE HARRIS LAW FIRM GROUP, P.A.**
800 Brickell Avenue, Suite 1205
Miami, Florida 33131
Tel.: 305.536.6131
Fax: 305.536.6130


By:     **/s/ Robert N. Harris**
Robert Newton Harris, Esq.
Fla. Bar. No.: 87671
robert@harrislawinfo.com
lruiz@harrislawinfo.com
ana@harrislawinfo.com